Filed 3/9/23  In re A.B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.B. et al., Persons Coming Under the Juvenile Court Law. | D081215 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EJ4582AB) |
| Plaintiff and Respondent, | |
| v. | |
| J.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Mark T. Cumba, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

J.B. (Father) appeals the juvenile court's order terminating his parental rights to his minor children, A.B. and R.B., under Welfare and Institutions Code[1] section 366.26.[2] The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) failed to conduct an adequate initial inquiry under section 224.2, subdivision (b) into the children's possible status as "Indian children," as defined by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.), because it failed to conduct ICWA inquiries with all of the children's paternal aunts and uncles. Father contends this was prejudicial error requiring reversal. Meanwhile, the Agency concedes error due to its failure to inquire of one of the paternal aunts but contends the error was harmless.

We disagree with both parties and find no error. Initially, it is unclear whether the Agency was required to question any extended family members as part of its initial inquiry under ICWA, because the children were not removed through the warrantless removal procedure "pursuant to [s]ection 306." (§ 224.2, subd. (b); see *In re Adrian L.* (2022) 86 Cal.App.5th 342, 353–374 (conc. opn. of Kelley, J.).) Regardless, however, we conclude there was no abuse of discretion under *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004-1008 (*Ezequiel G.*). Because the Agency's inquiry yielded reliable information from paternal grandfather that the children had possible Native American ancestry but were not affiliated with a tribe, the juvenile court did not abuse its discretion in finding that the Agency's ICWA inquiry was sufficient. Accordingly, we reject the Agency's partial concession and affirm.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The court also terminated J.S.'s (Mother's) parental rights. Because Mother did not appeal this order, however, we discuss her only as needed.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In December 2020, the Agency petitioned the juvenile court under section 300, subdivision (b)(1) on behalf of the children, alleging that the children were at substantial risk of serious physical harm because of Mother and Father's substance abuse. The Agency also alleged that the children sustained injuries during Mother's automobile accident because they were not secured in the vehicle and Mother had driven while intoxicated.

According to the Agency's detention report, the Agency interviewed Mother and Father in November 2020. Mother denied having any Native American ancestry, and Father thought he had ancestry with a tribe " 'but not enough to be enrolled or considered a part of a tribe.' " He reported that paternal grandfather said relatives had lived on a reservation, but Father had not looked into that history further. On December 1, 2020, the Agency also spoke with paternal aunt, K.B., but there is no indication that it ever asked her about the children's potential Native American ancestry.[4]

At the December 3, 2020 detention hearing, Mother and Father, through their counsel, denied having any Native American ancestry. The court found that ICWA did not apply.

Several weeks later, Father reiterated to the Agency that he had Native American ancestry on his father's (paternal grandfather's) side. This time, he stated that he believed the tribe was the Narragansett Tribe in Rhode Island. He denied being registered with the tribe or knowing of any family members who were registered, and he denied ever having lived on a

---

[3] Because Father's only contention on appeal concerns ICWA, we limit our factual background accordingly.

[4] K.B. did not attend any of the juvenile dependency hearings.

tribal reservation or receiving assistance from a tribe. During the same interview, Father also identified six siblings (paternal aunts and uncles) by name and age, and said that he had a good relationship with all of them. As the Agency concedes, there is no indication that any of these paternal aunts and uncles were ever asked about the children's possible Native American ancestry.

In early January 2021, the Agency identified five of the children's "potential" relatives, including paternal grandmother, paternal aunt K.B., and three other relatives sharing Father's last name but whose relationship to the children was not specified. The Agency mailed letters regarding the dependency proceedings to these potential relatives. But there is no indication that the letters included any questions about the children's possible Native American ancestry.

In July 2022, paternal grandmother reported to the Agency that paternal great-great grandmother was Native American and that paternal grandfather would know more information. Paternal grandfather gave the Agency the names of his parents and the first name and last initial of his grandfather, and he reported that his parents and grandfather had lived on a Narragansett tribal reservation in Rhode Island.

The same month, Mother reported to the Agency that her maternal great-great grandmother had Native American ancestry through the Chickasaw tribe in Oklahoma. Mother stated that her great-great-great-great grandmother was Native American, but Mother did not know her name, date of birth, or any other identifying information. Maternal grandmother also reported Native American ancestry but stated that Mother could not obtain tribal citizenship because " '[t]here was not enough evidence.' " Maternal grandmother provided the only information she had to the Agency:

4

the name of her great-great grandmother, that her great-great grandmother married an English man in Georgia named T.C., and that she had passed away in 1818.

In its July 29, 2022 addendum report, the Agency indicated it had contacted the Narragansett Indian Tribe in Charlestown, Rhode Island about the children's potential membership eligibility. The Agency also reported having contacted The Chickasaw Nation in Oklahoma and that the tribe's response was pending. At a July 29, 2022 hearing, the juvenile court granted the Agency's request for a 60-day continuance of the section 366.26 hearing to address the remaining "ICWA issues."

As of the continued September 22, 2022 section 366.26 hearing, both tribes' responses were still pending despite the Agency's follow-up efforts. The Agency requested, and the juvenile court granted, a further 30-day continuance of the section 366.26 hearing.

In its November 9, 2022 addendum report, the Agency indicated that, the previous month, it had received confirmation from both the Narragansett Indian Tribe and The Chickasaw Nation that the children did not have any ancestry or affiliation with the tribes. The Agency attached a copy of the letter it faxed to the Narragansett Tribe in July 2022, which included the information the Agency had collected from the children's relatives; the names of Father, Mother, paternal grandfather, paternal great-grandparents, and paternal great-great grandfather; and the dates of birth for Father, Mother, and paternal grandfather. The Agency also attached the responses received from the tribes: an e-mail correspondence with the Narragansett Indian Tribe of Rhode Island stating that the children "are not enrolled registered members" and a letter from The Chickasaw Nation stating that the children were not "Indian Children" under ICWA.

5

At the November 9, 2022 contested section 366.26 hearing, the juvenile court found without prejudice that ICWA did not apply, terminated parental rights, and ordered adoption as the children's permanent plan.

Father appeals that order but challenges only the juvenile court's finding that ICWA does not apply.[5]

## DISCUSSION

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*Isaiah W., supra*, 1 Cal.5th at p. 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) First, the Agency's duty of initial inquiry "includ[es], but [is] not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "Second, if that initial inquiry creates a 'reason to *believe*' the child is an

---

5     Notably, Father did not appeal from the juvenile court's earlier December 2020 detention order in which the court found that ICWA did not apply. Ordinarily, "California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.) However, because the duty of inquiry under ICWA is a *continuing* one, the one-shot rule does not apply here. (See § 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 6 (*Isaiah W.*) ["Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian child, we hold that the parent may challenge a finding of ICWA's inapplicability in an appeal from the subsequent [termination of parental rights] order, even if she did not raise such challenge in an appeal from the initial [detention] order"].)

Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, at p. 1052.)

Here, Father challenges only the sufficiency of the Agency's *initial* inquiry.[6] He contends that it fell short because the Agency failed to question all of the children's "extended family members"—his six siblings (paternal aunts and uncles)—about the children's possible Native American ancestry, which he claims was required by section 224.2, subdivision (b). The Agency concedes it should have conducted an ICWA inquiry with paternal aunt, K.B., with whom it was in contact. But the Agency disagrees that it was required to conduct ICWA inquiries with the remaining five paternal aunts and uncles.

As a preliminary matter, it is unclear whether the Agency was required to ask *any* "extended family members" about ICWA as part of its initial

---

[6] In his opening brief, Father challenged only the *initial* inquiry. Yet, in his supplemental brief, he purports to challenge the Agency's *further* inquiry of the children's extended relatives, despite our order mandating that supplemental briefing was "strictly limited" to the initial inquiry question. Because Father could have raised his further inquiry challenge in his opening brief but did not, the argument is waived. (*See Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 980, fn. 10 [arguments not raised in an opening brief are waived]; see also *In re J.N.* (2006) 138 Cal.App.4th 450, 459, fn. 5 ["The issue is waived, however, because it was raised for the first time in mother's reply brief"].) Moreover, a party cannot raise issues for the first time in supplemental briefing without the court's permission. (See *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1136, fn. 30.) Even if we considered this new argument, however, we would reject Father's claim of further inquiry error as to the extended relatives for the same reasons we are rejecting his claim of initial inquiry error.

inquiry under section 224.2, subdivision (b), much less that it was required to ask all six paternal aunts and uncles. Section 224.2, subdivision (b) provides that "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306 . . . the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the . . . extended family members[7] . . . whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) Thus, the statute's plain language would seem to narrow its application to situations where "a child is placed into the temporary custody of a county welfare department *pursuant to [s]ection 306*."[8] (§ 224.2, subd. (b), italics added; see also § 306 [authorizing a child's warrantless removal in an emergency].) Yet, here, the children were placed into the Agency's custody pursuant to court order under section 340, subdivision (a), not through the warrantless removal procedure provided by section 306. Accordingly, it is not at all clear that the Agency was required to conduct ICWA inquiries with "extended family members" at this initial inquiry stage. (See, e.g., *In re Adrian L.* (2022) 86 Cal.App.5th 342, 353-374 (conc. opn. of Kelley, J.) [concluding agency did not have an initial inquiry duty to inquire

---

7    ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA].) There is no dispute that Father's siblings—the children's aunts and uncles—qualify as the children's "extended family members."

8    In response to our request, the parties provided supplemental briefing addressing this issue.

of extended family members under § 224.2, subd. (b) because child was not placed into agency's temporary custody "pursuant to section 306"].)

We need not decide that issue, however, because regardless of section 224.2, subdivision (b)'s application, we conclude there was no abuse of discretion under *Ezequiel G., supra*, 81 Cal.App.5th at pp. 1004-1008. (*Ibid.*) In *Ezequiel G.*, the Court of Appeal adopted an abuse of discretion standard for reviewing the adequacy of the Agency's ICWA inquiry. In so doing, the court explained that, "[d]eciding whether an inquiry was 'adequate' and an agency acted with appropriate diligence requires more of a court than simply applying a statutory checklist to undisputed facts. Instead, it requires the court to 'engage in a delicate balancing' [citation], to assess whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case. In short, the statute directs the juvenile court to perform a quintessentially discretionary function, and thus . . . our review should be for abuse of discretion." (*Id.* at pp. 1004-1005.)

Notably, section 224.2, subdivision (b) does not "specify how many extended family members the [A]gency must interview." (*Ezequiel G., supra*, 81 Cal.App.5th at p. 1007.) And "given the statute's expansive language and the vagaries of the extended family information parents are willing or able to provide, determining compliance with ICWA requires a significant exercise of discretion." (*Id.* at p. 1006.) Accordingly, "the focus of the court's analysis should not be on the number of individuals interviewed, but on whether the [A]gency's ICWA inquiry *has yielded reliable information about a child's possible tribe affiliation.*" (*Id.* at p. 1009, italics added.)

The Agency's ICWA inquiry here did so. It included interviewing some of the children's "extended family members" on both sides—paternal and maternal grandparents—and it yielded reliable information about the

9

children's possible tribal affiliation on their paternal side.[9]  The record indicates that paternal grandfather was a reliable source on this subject: Father and paternal grandmother both told the Agency that paternal grandfather would know this information.  And he did.  Specifically, he reported that his parents and grandfather had lived on a Narragansett Indian reservation in Rhode Island, and he provided their names and known dates of birth to the Agency.  Based on that reliable information, there was simply no reason for the Agency to seek additional information from Father's six siblings, who were unlikely to know more than paternal grandfather about his own parents' and grandfather's ancestry.[10]  Finally, the Agency provided the information obtained from paternal grandfather to the Narragansett Tribe in Rhode Island and learned that the children were not, in fact, enrolled members.  (See *Ezequiel G., supra*, 81 Cal.App.5th at p. 1009

---

[9]     We observe that the Agency's ICWA inquiry with Mother and maternal grandmother likewise yielded reliable information about their possible affiliation with The Chickasaw Tribe on their maternal side, but because this line of inquiry is not at issue on appeal, we need not and do not address it further.

[10]     We reject the Agency's concession that it should have conducted an ICWA inquiry with paternal aunt, K.B.  As discussed above, there was simply no reason for the Agency to seek additional information from K.B. about the children's possible Native American ancestry given the information received directly from paternal grandfather.  Nor was the court required to conduct such an inquiry with K.B., who was not a "participant" in the initial juvenile dependency hearing or any other hearings.  (See § 224.2, subd. (c) ["[T]he court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child"].)

["[A]n Indian child is one with a *tribal affiliation*, not merely Indian ancestry"] (italics added).)[11]

In short, because the Agency's inquiry of several extended family members yielded reliable information that the children had possible Indian ancestry but were not affiliated with any tribe, we conclude the juvenile court did not abuse its discretion by finding that the Agency conducted a sufficient ICWA inquiry. Therefore, we affirm.

DISPOSITION

The November 9, 2022 order is affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

---

[11] Although not specifically challenged by Father, we further conclude there is no evidence before us indicating a "reason to know" the children are Indian children under ICWA. Father does not contend there is evidence that the children met any of the six statutory criteria required to qualify as Indian children under 224.2, subdivision (d). (See *Ezequiel G., supra*, 81 Cal.App.5th at p. 1004 [where none of these six factors exists, "the court must make a finding that there is no reason to know the child is an Indian child"].)